# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOROTHY WALLACE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-0266 c/w 08-4398** |
| **MIKE JOHANNS, SECRETARY DEPARTMENT OF AGRICULTURE** | **SECTION "C" (4)** |

## ORDER AND REASONS [1]

Before the Court is a Motion for Summary Judgment filed by defendant Mike Johanns, Secretary for the United States Department of Agriculture ("the Department"). (Rec. Doc. 34). The plaintiff, Dorothy Wallace Johnson ("Johnson") opposes this motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the applicable law, the Court finds that the Motion for Summary Judgment has merit for the following reasons.[2]

**I. Factual Background**

In her complaint, Johnson asserts claims of race and gender discrimination against the Department. The parties agree as to many of the facts that form the basis of Johnson's complaint. The disagreement lies on the legal significance of these events.

---

[1] Michelle E. Durieux-Oquendo, a third year law student at Tulane University Law School, assisted in the research and preparation of this opinion.

[2] This ruling pertains to Civ. Act. 07-266 only.

It is undisputed that Johnson is an African American female of 59 years of age. (Rec. Doc. 38, p. 1). She was an employee of the federal government for over 30 years, and as such earned her retirement in July, 2008. Id. Since 1996, Johnson worked for the National Finance Center of the Department of Agriculture. Id. During the last 10 years of her career, Johnson held the position of Information Technology Specialist, GS-2210-12. Id. at 2. Since 2000, Johnson attempted to obtain a promotion, to this end she applied for promotions to GS-13 positions. Id. Johnson was never promoted. Id.

In January 2003, the plaintiff received a response to a grievance filed by the plaintiff. (Rec. Doc. 4, Exh. 4). The grievance resulted from Johnson's request for a desk audit. (Rec. Doc. 34, p. 7). Virginia Gaye Cook, the acting Human Resources Chief for the National Finance Center, approved the request for the desk audit and hired Steven Perloff, ("Perloff"), who began the audit on February 2003. Id. Johnson expected the result of this desk audit to reflect that she was performing the duties of a GS-13, and was thus wrongfully classified as a GS-12. (Rec. Doc. 38, p. 2). Id. at 4. In order to conduct the desk audit, Perloff interviewed Johnson as well as her supervisors. (Rec. Doc. 34, Exh. E). Johnson's supervisors stated, in their meetings with Perloff, that Johnson was performing application developing programming instead of system analysis work, as Johnson maintained. Id. Perloff also interviewed other employees that shared Johnson's position. Id.

Contrary to Johnson's expectations, the results of the desk audit stated that Johnson was conducting the duties of a GS-11. (Rec. Doc. 34, Exhs. G & H). Perloff arrived at this conclusion after he interpreted job facts, the intent of the position, and other factors that resulted from the interviews with supervisors and Johnson herself. Id. Johnson learned the result of the audit on

October 2003, through an email. (Rec. Doc. 34, p. 10, Exh. F). This email stated that plaintiff's position "has been classified as a GS-12" and did not indicate that according to the audit she was found to be performing the duties of a GS-11. ( Rec. Doc. 34, Exh. F). In early 2004, Johnson learned that the desk audit concluded that she was performing at a GS-11 level, contrary to her beliefs. (Rec. Doc. 34, Exh. H). The plaintiff was also advised that new position descriptions for all employees were being developed and "[t]hat the agency . . . [did] not intend to effect any action that would adversely impact you current grade as a result of this review." Id. Johnson was also told that she would "be placed on a new GS-2210-12 position description when the new position descriptions . . . [were] implemented." Id.

Johnson first contacted an EEO counselor on March 11, 2004, and filed a complaint with the EEOC on April 27, 2004. (Rec. Docs. 34, Exh. A). In this complaint, Johnson alleged age and race discrimination in connection with the failure of the Department to promote her and from the result of the desk audit. Id. On June 9, 2004, the claims of discrimination were dismissed as untimely filed. (Rec. Docs. 34, Exh. A; 38, Exh. B).

The parties apparently agree that the plaintiff appealed this adverse decision. They also appear to agree that on December 29, 2004, the EEOC issued an order dismissing two of the claims for non-promotion as untimely, and ordering an investigation with regard to the desk audit. (Rec. Docs. 34, Exh. A).[3] The EEOC issued a decision from its investigation concerning the desk audit on October 31, 2006, affirming the agency's determination of no discrimination. (Rec. Doc. 4, pp. 20-24). Suit was filed on January, 2007. Id.

---

[3]For unexplained reasons, it appears that neither party has provided the Court with a copy of the relevant documentation for the December 2004 EEOC activity.

Count 1 of the plaintiff's complaint alleges discrimination with regard to a vacancy announcement in 2001, Count 2 alleges discrimination with regard to the "June 24, 2003" desk audit, Count 3 alleges the discriminatory evaluation with regard to the desk audit, Count 4 alleges wrongful denial of a promotion in 2000, Count 5 alleges discriminatory promotions in 2001, and Count 6 claims retaliation.

**II. Standard of Review**

A district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986). The court must find a "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [is] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Technologies, Inc., 882 F.2d 993, 996(5th Cir. 1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing Celotex, 477 U.S. at 322-324). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. "If the evidence is merely

4

colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-250.

**III. Analysis**

A. Counts 1, 4 & 5 & Continuing Violation

The Department moves to dismiss Counts 1, 4, and 5, for failure to exhaust administrative remedies and untimeliness. (Rec. Doc. 34, p. 1). The subject matter of these claims dates back to 2000 and 2001. The plaintiff acknowledges that the EEOC dismissed the claims as untimely, apparently in December 2004, but that she has "attempted to exhaust her administrative remedies by filing these claims." (Rec. Doc. 38, p. 7). It appears to the Court that the plaintiff does not maintain that the claims in themselves were timely, or that she appealed the December 29, 2004, dismissal by the EEOC in a timely manner. Instead, Johnson opposes dismissal of these claims on two grounds. First, Johnson contends that the claims contained in Counts 1, 4, and 5 were asserted in the same complaint in which she objected to the desk audit, although she offers no legal authority as to why they are therefore properly exhausted. (Rec. Doc. 38, p. 7).[4] Second, Johnson submits that all the claims made in the EEO complaint are "continuing violations of the prohibition against age and race discrimination." Id.

Claims or particular events that are not exhausted administratively fall beyond the purview of the court, and must be dismissed. Tolbert v. U.S., 916 F.2d 245, 247-48 (5th Cir. 1990). In the present case, the Department alleges that Johnson only filed an administrative complaint regarding her desk audit. (Rec. Doc. 34, p. 5). Johnson argues that the Court should determine whether the

---

[4]There is no evidence that the dismissal was appealed until this lawsuit. As such, the plaintiff appears to agree that the finding that the claims were untimely is final.

EEOC was correct in dismissing these claims, but provides no legal authority for her argument that the claims are either timely or properly exhausted. (Rec. Doc. 38, p. 7). As such, claims for failure to fill a vacancy, the non-selection claim, as well as Johnson's allegation of discrimination based on the Departments organizational structure are barred. Id. at 6.

The continuing violation doctrine permits the tolling of the statutory limitation in a discrimination case when the violation is deemed ongoing. Messer v. Meno, 130 F.3d 130, 134-35 (5th Cir. 1997). Therefore, it "relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more which falls within the limitation period . . .." Id. at 134-35. The continuing violation doctrine does not apply to acts that are discrete and sufficient to alert the plaintiff that a cause of action has accrued. Huckabay v. Moore, 142 F.3d 233, 238-39 (5th Cir. 1998). The plaintiff must show that "there is a persisting and continuing system of discriminatory practices in promotion or transfer that produces effects that may not manifest themselves as individually discriminatory except in cumulating over a period of time." Id. at 239 (citing Messer v. Meno, 130 F.3d at 130).

Discrete actions do not trigger the continuing violation doctrine. Frank v. Xerox Corp., 347 F.3d 130, 136 (5th Cir. 2003). The Fifth Circuit has consistently found that failure to promote presents the kind of discrete action that should make a reasonable person alert as to discrimination. Huckabay v. Moore, 142 F.3d 233, 240 (5th Cir. 1998) (noting that " . . . failure to promote is an isolated occurrence . . . "). In Frank, one of the plaintiffs alleged that the continuing violation doctrine applied to several instances in which she was denied a promotion. Frank, 447 F.3d at 133. In that case, the plaintiff alleged that the statutory limitation as to her claims of discrimination base on failure to promote her in 1997 and 1998 were tolled by the continuing violation doctrine. Id. The

court disagreed and noted that "beyond speculation, [it] . . . cannot say that the record confirms an organized or continuing effort to discriminate." Id. at 136.

The "theory of continuing violation has to be guardedly employed because within it are the seeds of destruction of the [applicable] statute of limitation . . .." Abrams v. Baylor College of Med., 805 F.2d 528, 533 (5th Cir.1986). In the present case, analogously to Frank, this Court finds that Johnson has not established that the discrimination manifested itself over time, rather than in a series of discrete acts. Here, Johnson alleges that she was not promoted in several instances and that it was only after the completion of the desk audit that she understood that the refusal to promote her laid on discriminatory grounds. (Rec. Doc. 38, p. 7). However, failure to promote is a discrete act. Frank, 447 F.3d at 133. As such, reasonable person in Johnson situation would have been suspicious of the reasons she was refused a promotion. This Court, as the Fifth Circuit, is careful to carve out equitable exceptions to continuing violation doctrine, a well settled principle of law. Johnson has failed to establish the applicability of the continuing violation doctrine. Accordingly, this Court grants the Department's motion as to Counts 1, 4, and 5.

B. Counts 2 & 3 & Adverse Employment Action

The Department also moves to dismiss claims on the grounds that she failed to prove a prima facie case of racial and age discrimination with regard to the claims emanating from the desk audit conducted in 2003. (Rec. Doc. 34, p. 6). According to the Department, Johnson has not established that she was subject of an adverse employment action, as required by the McDonnell Douglass framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Johnson, on the other

7

hand, contends that the desk audit resulted in an adverse employment action. (Rec. Doc. 38, p. 10). Johnson alleges that following the biased and discriminatory desk audit she was denied a promotion because the result was adverse and did not lead to a grade increase. Id. According to this version of the events, had Johnson been classified as a GS-13 rather than a GS-12, she would have been entitled to a promotion and an increase in compensation. Id. The Department contends that Johnson is unable to establish that she suffered an adverse employment action because there was no change in her position, compensation, or job description. (Rec. Doc. 34, p. 11).

A case of discrimination using circumstantial evidence uses the burden shifting framework set out in McDonnell Douglas Corp. v. Green which requires that a plaintiff bear the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence. McDonnell Douglas Corp., 411 U.S. at , 802. This requires a demonstration that the defendant belonged to a protected group, was qualified for the position, suffered an adverse employment action and was replaced with similarly qualified person not a member of this group, or in the case of disparate treatment, the similarly situated employees were more favorably treated. Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d 589, 593 (5th Cir. 2007); Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003); Laxton v. Gap, Inc., 333 F.3d 572, 579 (5th Cir. 2003); Blow v. City of San Antonio, Texas, 236 F.3d 293, 296 (5th Cir. 2001).

Not every negative employment action constitutes an adverse employment action. Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539 (5th Cir. 1997). An action classifies as an adverse employment when it has a "material impact on the terms and conditions of the employment.

Robinson v. Paulson, No. H-06-4083, 2008 WL 4692392, at *13, Oct. 22, 2008. As such, only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" constitute adverse employment actions. McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007). Negative employment evaluations by themselves have not been held to constitution adverse employment actions. Bacon v. Honda of Am. Mfg., Inc. 192 Fed.Appx. 337, 343 (6th Cir. 2006). The action must result in "tangible job consequences" to amount to an adverse employment action. Whittaker v. N. Illinois Univ., 424 F.3d 640, 648 (7th Cir. 2005). The Court of Appeals for the Seventh Circuit has recognized that negative evaluations or written warnings that might lead to "ineligibility for job benefits like promotion, transfer to a more favorable location, or an advantageous increase in responsibilities" can constitute an adverse employment action. Id.

Johnson contends that the negative desk audit resulted in a denial of a promotion. (Rec. Doc. 38, pp. 10-11). She offers no evidence to support this allegation or a connection between the desk audit and a particular promotion. The Court finds that although the audit may have produced a result adverse to the plaintiff's expectation that her position warranted an increased grade, but it did not constitute an adverse employment action for purposes of her claims. Instead, it was in the nature of an administrative function designed to clarify job duties and, in any event, did not affect her pay at all. Wafer v. Potter, No. 03-1976, 2006 WL 13151, at * 4, Jan. 03, 2006(desk audit resulting in elimination of position not adverse employment action). The Department has presented unrebutted proof that all relevant positions were being redefined independent of the plaintiff's requested desk audit. The Court finds that the desk audit was neither adverse nor an employment action for present

9

purposes.[5]

### D. Count 6 & Retaliation[6]

Lastly, the department seeks to dismiss Johnson claim of retaliation. (Rec. Doc. 34, p.2) The Department alleges this Court lacks jurisdiction because Johnson failed to exhaust administrative remedies precludes the claim. Id. at 18. Johnson agrees that her failure to assert retaliation in the complaint of employment discrimination bars this action. (Rec. Doc. 38, p.16). As such, Count 6 is dismissed for failure to exhaust administrative remedies.

**IV. Conclusion**

For the reasons stated above,

IT IS ORDERED that the defendant's motion for summary judgment is GRANTED. (Rec. Doc. 34). All claims presented in Civ. Act. No. 07-266 are dismissed.

New Orleans, Louisiana this 20th day of February, 2009.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[5] The Court also finds that the plaintiff is unable to show that there is any pretext in the government's reasons regarding the desk audit which was, in fact, conducted at the plaintiff's request.

[6] Any retaliation claim based on untimely non-selection claims fail as a result of the dismissal of the underlying claims, as set forth in Section III A.